1

2

3

4

5              UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF WASHINGTON

7   JOHN L. CORRIGAN,

                                          NO:  13-CV-0116-TOR
8                     Plaintiff,

                                          ORDER GRANTING DEFENDANTS'
9        v.                               MOTIONS FOR SUMMARY
                                          JUDGMENT
10  WSP OFFICER TIMOTHY KRON,
    WSP OFFICER CAMERON
11  IVERSON,
    CORRECTIONS FACILITY
12  SERGEANT SCOTT PONOZZO,
    GRANT COUNTY DEPUTY
13  PROSECUTOR DOUGLAS R.
    MITCHELL, and
14  GRANT COUNTY,

15                    Defendants.

16

17       BEFORE THE COURT are Defendants Washington State Patrol Troopers

18  Timothy Kron and Cameron Iverson's Motion for Summary Judgment (ECF No.

19  33), and Defendants Grant County, Scott Ponozzo, and Douglas R. Mitchell's

20  Motion for Summary Judgment (ECF No. 38).  This matter was submitted for

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT~ 1

consideration without oral argument.  The Court has reviewed the briefing and the record and files herein, and is fully informed.

BACKGROUND

Plaintiff John L. Corrigan ("Corrigan") brought this suit against two Washington State Patrol Troopers, Grant County, the Grant County prosecutor, a Corrections Facility Sergeant, and the Chief Justice of the Washington State Supreme Court[1] based on an incident arising out of a speeding infraction.  ECF No. 1.  The Troopers, Grant County, the prosecutor, and the sergeant move for summary judgment in the motions now before the Court.  They argue, *inter alia*, that probable cause bars Corrigan's unlawful search and seizure and malicious prosecution claims, that the force the Troopers' used was reasonable, that the individual defendants had qualified immunity, and that Corrigan has stated no facts giving rise to Grant County's liability.

//

//

//

//

---

[1] Chief Justice Madsen was terminated from the caption of this case when the Court granted her Rule 12(b) Motion to Dismiss.  ECF No. 32.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT~ 2

FACTS[2]

In April 2011,[3] John L. Corrigan was driving westbound on Interstate-90 in Grant County, Washington.  ECF No. 1 at 4; ECF No. 33 at 4.  Corrigan's vehicle approached Trooper Kron's unmarked police vehicle from the rear.  ECF No. 33 at 4; ECF No. 36-1 at 3. Kron reports activating his rear radar, clocking Corrigan's approaching speed at 82 miles per hour.  ECF No. 33 at 4; ECF No. 36-1 at 3.[4] Corrigan passed Kron's vehicle in the left lane, and slowed to 70 miles per hour. ECF No. 33 at 4.  Kron claims that it appeared that Corrigan recognized him as a police officer, but Corrigan claims this is inadmissible as a conclusion.  ECF No.

---

[2] These facts were gleaned from Plaintiff's complaint and the parties' statements of fact and response (ECF Nos. 1, 33, 38 and 40) and appended exhibits, and are considered true for purposes of the instant motions.

[3] Corrigan's Complaint claims that the date was April 11, 2011, while the Trooper's motion for summary judgment and supporting exhibits reflect the date as April 22, 2011.  *See* ECF No. 1 at 4; ECF No. 33 at 4; ECF No. 36-1 at 2, 3.

[4] Corrigan disputes that Trooper Kron activated his radar and that Corrigan's vehicle was traveling at 82 miles per hour.  ECF No. 40 at 3.  However, Corrigan provides no admissible evidence in support of his dispute of the Troopers' sworn statement and supporting documentation.

1    33 at 4; ECF No. 40 at 3.  Kron pulled into the lane behind Corrigan, activating his

2    emergency lights.  ECF No. 33 at 4.  Corrigan moved into the right lane,

3    continuing to drive at 70 miles per hour.  *Id*.  Kron reports having motioned

4    Corrigan to pull over; Corrigan disputes this, but provides no evidentiary basis or

5    explanation for this dispute.  ECF No. 33 at 4.  Kron also reports that Corrigan

6    waved his hands in the air at him.  *Id*.  Kron had both his emergency lights and

7    siren activated.  ECF No. 33 at 5.  Though Corrigan disputes this, Kron claims to

8    have pulled up next to Corrigan's car, rolled down his passenger window and

9    waved at Corrigan to pull over; Corrigan continued at 70 miles per hour.  ECF No.

10   33 at 5.

11        Kron followed Corrigan's vehicle for approximately eight miles, at which

12   time Trooper Iverson's marked patrol vehicle, with emergency lights and siren

13   activated, caught up to them.  ECF No. 33 at 5.  After Iverson pulled his vehicle

14   between Kron's and Corrigan's vehicles, Corrigan continued a short distance and

15   pulled into the Wild Horses Monument lookout area.  *Id*.  Kron approached

16   Corrigan's vehicle, asked him to step out, and placed him in handcuffs.  *Id*.

17        After a short exchange, Corrigan was placed in the back seat of Kron's

18   patrol vehicle.  ECF No. 33 at 6; ECF No. 1 at 4.  At some point, Corrigan was

19   Mirandized.  ECF No. 33 at 6; ECF No. 40 at 4.  During the encounter, Corrigan

20   said, "I have been stopped in California by individuals claiming to be police

officers that had lights and sirens but were not police officers."  ECF No. 40 at 4.

He further said "do what you need to do."  ECF No. 33 at 6.

Corrigan states that he had to lay across the back seat of the trooper's vehicle because it would have been too painful to sit upright, and that he was wedged in the back seat and unable to move his feet.  ECF No. 1 at 4-5.  During this time, the troopers looked into Corrigan's vehicle's glove box and took out his vehicle registration.  ECF No. 1 at 4-5.  Corrigan's person was searched.  ECF No. 1 at 5.  Kron spoke with Deputy Prosecutor Mitchell several times.  ECF No. 1 at 5.[5]  At the scene, Kron asked whether Corrigan wanted a second set of handcuffs, which Corrigan believed meant that he would be made more uncomfortable, so he refused.  ECF No. 33 at 6; ECF No. 40 at 5.

Kron took Corrigan to the Grant County Corrections Facility, while Iverson impounded Corrigan's vehicle.  ECF No. 1 at 5; ECF No. 33 at 6.  During the trip, Kron again asked Corrigan if he would like another set of handcuffs, this time making clear to Corrigan that he meant that he would add a second set of handcuffs to extend the existing pair in order to make Corrigan more comfortable; this time, Corrigan asked for a second set.  ECF No. 33 at 7; ECF No. 1 at 5 ("Officer Kron then kindly added another pair of handcuffs which relieved—slightly—the pressure of the one set of handcuffs.").  Corrigan stated that the second set of

---

[5] No party has enlightened the Court as to what these conversations concerned.

handcuffs did not much improve his comfort. ECF No. 41. However, he did not complain of any pain. ECF No. 33 at 7.

When they arrived at the corrections facility, Kron turned Corrigan over to Grant County Deputy Sheriff Sergeant Ponozzo. ECF No. 1 at 5. Ponozzo booked, fingerprinted, and photographed Corrigan, and Corrigan learned that he had been cited for speeding and failure to stop for a police officer and give information. ECF No. 1 at 5-6. Plaintiff was released on his own recognizance around 10 a.m. the following day. ECF No. 1 at 6.

Corrigan's speeding citation was dismissed when Officer Kron failed to show up for trial. ECF No. 1 at 6. Corrigan was convicted at trial for failure to stop, but the conviction was later overturned by the superior court and dismissed without prejudice. ECF No. 1 at 6. After a second jury trial, Corrigan was convicted again on November 12, 2013, for failure to stop in violation of RCW § 46.61.022.

In his complaint, Corrigan alleges that the defendants acted under color of state law to deprive him of "constitutionally protected rights under the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States and the Washington State constitution including, but not limited to: a) the right to be free from unreasonable searches and seizures; b) the right not to be deprived of liberty without due process of law; d) the right to be free from excessive use of force by

persons acting under color of state law; and e) the right to be free from false arrest and false imprisonment." ECF No. 1 at 7. He contends that Defendants Kron, Iverson, Mitchell, and Ponozzo "acted under color of state law and conducted an unauthorized, warrantless illegal search and seizure of Plaintiff. *Id*. at 8. Corrigan also alleges that Defendants Kron, Iverson, Mitchell and Ponozzo "conspired under color of state law" to deprive Plaintiff of constitutionally protected rights. ECF No. 1 at 8. He further alleges malicious prosecution against Kron only. ECF No. 1 at 9. Corrigan further claims that Defendants Grant County, Ponozzo, and Mitchell, deprived Corrigan of his constitutional rights when they "implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices, including, among other things: a) denial to Plaintiff of a fair and impartial trial; b) abuse of the judicial and post-judicial process; c) failure to supervise and provide adequate training to Grant County personnel—especially judges, prosecutors, and Deputy Sheriffs." ECF No. 1 at 10.

## DISCUSSION

Defendants Washington State Patrol Troopers Timothy Kron and Cameron Iverson ("Troopers") move for summary judgment against Plaintiff on grounds that (1) Corrigan's conviction is conclusive evidence of probable cause, barring his Fourth, Fifth, and Fourteenth Amendment claims and his malicious prosecution claim; (2) the Troopers had reasonable suspicion and probable cause to stop

Corrigan for speeding and to arrest him for failing to stop; (3) his excessive force

claim fails because the force used was objectively reasonable; and (4) the Troopers

are entitled to qualified immunity. ECF No. 33 at 1-2.  In a separate motion,

Defendants Grant County, Sergeant Scott Ponozzo, and Deputy Prosecutor Scott

Mitchell (collectively, "County Defendants") move for summary judgment on all

of Corrigan's claims against them on the grounds that (1) Mitchell is entitled to

absolute immunity; (2) Ponozzo is entitled to qualified immunity; (3) there is no

evidence giving rise to liability for Grant County; and (4) there is no evidence of a

conspiracy to deprive plaintiff of his civil rights.  ECF No. 38.

### 1.  <u>Legal Standard</u>

The Court may grant summary judgment in favor of a moving party who

demonstrates "that there is no genuine dispute as to any material fact and that the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In ruling

on a motion for summary judgment, the court must only consider admissible

evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).  The

party moving for summary judgment bears the initial burden of showing the

absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986).  The burden then shifts to the non-moving party to identify

"specific facts" showing there is a genuine issue of material fact.  *See Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla

1    of evidence in support of the plaintiff's position will be insufficient; there must be

2    evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. For

3    purposes of summary judgment, a fact is "material" if it might affect the outcome

4    of the suit under the governing law. *Id.* at 248.  Further, a material fact is

5    "genuine" only where the evidence is such that a reasonable jury could find in

6    favor of the non-moving party. *Id.*  The Court views the facts, and all rational

7    inferences therefrom, in the light most favorable to the non-moving party. *Scott v.*

8    *Harris*, 550 U.S. 372, 378 (2007).

9          Mere disagreement, or the bald assertion that a genuine issue of material fact

10   exists, no longer precludes the use of summary judgment. *See California*

11   *Architectural Bldg. Prods., Inc., v. Franciscan Ceramics, Inc.,* 818 F.2d 1466,

12   1468 (9th Cir. 1987); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir.

13   2007).  Furthermore, conclusory or speculative testimony is insufficient to raise a

14   genuine issue of fact to defeat summary judgment.  *Anheuser-Busch, Inc. v.*

15   *Natural Beverage Distributors,* 60 F.3d 337, 345 (9th Cir. 1995).

16        A cause of action pursuant to 42 U.S.C. § 1983 may be maintained "against

17   any person acting under the color of law who deprives another 'of any rights,

18   privileges, or immunities secured by the Constitution and laws' of the United

19   States." *Southern Cal. Gas Co., v. City of Santa Ana,* 336 F.3d 885, 887 (9th Cir.

20   2003) (citing 42 U.S.C. § 1983).  Corrigan's pro se complaint alleges constitutional

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT~ 9

violations including unlawful arrest, use of excessive force, and violation of due

process rights.  It also alleges state law claims, including malicious prosecution,

false arrest, and false imprisonment.  The Court considers each issue in turn.

2. **Whether Probable Cause Bars Corrigan's claims of unlawful arrest and malicious prosecution**

   a.  **Warrantless Arrest and Search**

In "Count I" of his complaint, titled "Violation of Civil Rights Pursuant to

Title 42 U.S.C. § 1983," Corrigan argues that Defendants Kron, Iverson, Mitchell

and Ponozzo deprived Corrigan of "certain constitutionally protected rights under

the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United

States and the Washington State Constitution including, but not limited to…the

right to be free from unreasonable searches and seizures." ECF Nol. 1 at 7.  The

Troopers counter that Corrigan's arrest is lawful because Corrigan's subsequent

conviction for the crime of arrest proves that they had probable cause, Corrigan's

subsequent conviction bars a finding of unlawful arrest because of the *Heck*

doctrine, and because arrest for a minor crime does not offend the Fourth

Amendment.

"Arrest by police officers without probable cause violates the Fourth

Amendment's guarantee of security from unreasonable searches and seizures,

giving rise to a claim for false arrest under § 1983." *Caballero v. City of Concord,*

956 F.2d 204, 206 (9th Cir. 1992).  "An officer has probable cause to make a warrantless arrest when the facts and circumstances within his knowledge are sufficient for a reasonably prudent person to believe that the suspect has committed a crime."  *Rosenbaum v. Washoe County,* 663 F.3d 1071, 1076 (9th Cir. 2011).  "In dealing with probable cause, however, as the very name implies, we deal with probabilities.  These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."  *Brinegar v. United States,* 338 U.S. 160, 175 (1949).

Under Washington law, "Any person who wilfully fails to stop when requested or signaled to do so by a person reasonably identifiable as a law enforcement officer or to comply with RCW 46.61.021(3), is guilty of a misdemeanor."  RCW § 46.61.022.

First, the Court notes that the Fourth Amendment does not prohibit warrantless arrest for even very minor crimes as long as the arrest is supported by probable cause. Corrigan appears to repeatedly argue that failing to stop for a police officer is not an offense for which he may be arrested *under state law*, even though he concedes it is a crime as opposed to a civil infraction.  ECF No. 40 at 16, 17 (citing RCW 10.31.100 and *State v. Reding*, 119 Wash.2d 685 (1992)). Irrespective of Plaintiff's argument, section 1983 only applies to violations of Constitutional rights, not state statutes.  *See Ove v. Gwinn*, 264 F.3d 817, 824 (9th

Cir. 2001) ("To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress.")[6].  *See also Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.") and *Virginia v. Moore*, 553 U.S. 164, 176 (2008) ("We conclude that warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections.").

The Supreme Court's decision in *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001), forecloses Corrigan's claim.  In *Atwater*, an officer stopped a woman driving her truck with her children. None of them were wearing their seatbelts, in

_____

[6] The Washington Constitution is not enforced through a section 1983 action, nor does Corrigan argue that it provides any greater protection than the Fourth Amendment, for which the Court could exercise supplemental jurisdiction.  Even if a state cause of action remained in this case, the Court declines to exercise supplemental jurisdiction without a federal cause of action.

1    violation of Texas law. When Atwater could not produce her insurance papers or

2    license, the officer handcuffed her and took her to the local police station, where

3    booking officers had her remove her shoes, jewelry, and eyeglasses, and empty her

4    pockets.  Officers took Atwater's "mug shot" and placed her, alone, in a jail cell for

5    about one hour, after which she was taken before a magistrate and released on

6    $310 bond.  Atwater was charged with driving without her seatbelt fastened,

7    failing to secure her children in seatbelts, driving without a license, and failing to

8    provide proof of insurance.  She ultimately pleaded no contest to the misdemeanor

9    seatbelt offenses and paid a $50 fine; the other charges were dismissed.  The

10   Supreme Court held "[i]f an officer has probable cause to believe that an individual

11   has committed even a very minor criminal offense in his presence, he may, without

12   violating the Fourth Amendment, arrest the offender."  *Id*. at 354.  Thus,

13   warrantless arrests for even minor crimes, if they are supported by probable cause,

14   do not offend the Fourth Amendment.

15       Here, viewing the facts in the light most favorable to Corrigan, a reasonably

16   prudent person would believe that Corrigan had committed the misdemeanor of

17   failing to stop for a police officer.  Undisputed evidence indicates that Kron was

18   "reasonably identifiable as a law enforcement officer" to Corrigan.  *See* RCW §

19   46.61.022.  Corrigan does not dispute that he passed Kron, or that Kron's

20   emergency lights were activated, or that Kron followed Corrigan's vehicle closely.

1    *See* ECF No. 33 at 4-5; ECF No. 40 at 2-3.  Corrigan even notes in his declaration

2    that he at first suspected Kron's car was an unmarked police vehicle.  ECF No. 41

3    at 2.  Thus, Kron reasonably believed that he had clearly identified himself as an

4    officer and that Corrigan was ignoring him.  Thus, a "reasonably prudent person"

5    could "believe that the suspect has committed a crime" which would justify the

6    arrest under the Constitution.

7            Nor does the Court find that Corrigan's contention that he was "not going 82

8    mph and Kron did not activate his radar" bars a finding of probable cause.  *See*

9    ECF No. 40 at 3.  Corrigan may argue that Kron's probable cause to arrest him for

10   failure to stop is undermined by Kron's lack of reasonable suspicion to pull him

11   over in the first place, based on Corrigan's dispute of his speed.  *See* ECF No. 40 at

12   3.  However, as Defendants point out in their reply memorandum (ECF No. 45 at

13   5), Corrigan offers only a conclusory denial of the Troopers' facts, citing no reason

14   or evidence in support.  Under the summary judgment standard, a "bald assertion

15   that a genuine issue of material fact exists" is insufficient to preclude summary

16   judgment.  *See California Architectural,* 818 F.2d at 1468.  Even if the Court

17   accepts Corrigan's "bald assertion" that he was not traveling at a rate of 82 miles

18   per hour, Corrigan does not dispute that Kron's vehicle was going 70 miles per

19   hour and that Corrigan overtook Kron's vehicle, which is evidence that Corrigan

20   was in fact exceeding the posted speed limit.  *See* ECF No. 33 at 4; ECF No. 40 at

1    3.  Thus, the undisputed evidence indicates that Corrigan was speeding and that

2    Kron therefore had reasonable suspicion or probable cause to pull him over.

3         Further bolstering the Court's finding of probable cause is Corrigan's

4    ultimate conviction of the crime for which he was arrested: failure to stop for a

5    police officer.  The Troopers contend that this conviction is conclusive of probable

6    cause.  ECF No. 33 at 10-11.  The proposition the Troopers set forth is correct.  *See*

7    *Bergstralh v. Lowe*, 504 F.2d 1276, 1277-1279 (9th Cir. 1974) (a conviction

8    conclusively establishes that the arrest was made with probable cause, unless the

9    conviction was obtained by fraud, perjury or other corrupt means) (citing

10   Restatement of Torts § 667(1) (1938)).  Here, Corrigan's ultimate conviction under

11   RCW § 46.61.022 for failure to obey an officer gives rise to a presumption that the

12   arrest was made with probable cause.

13        In their reply, the Troopers also argue that because of his conviction,

14   Corrigan's § 1983 action is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).[7]  In

15   *Heck v. Humphrey*, the Supreme Court held that a constitutional challenge to a

16   conviction or sentence is not cognizable under § 1983 "unless and until" the

17

18   _____

19   [7] Charges were refiled and the case was retried after the original case against

20   Corrigan was dismissed without prejudice on appeal.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT~ 15

conviction or sentence has been invalidated.  512 U.S. at 486–87, 489.

Specifically, the Court ruled:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. at 486–87 (internal citation and footnote omitted).  Thus, under *Heck*, a court must dismiss a § 1983 claim which, if successful, "would necessarily imply the invalidity" of the plaintiff's underlying conviction or sentence.  *Butterfield v. Bail*, 120 F.3d 1023, 1024 (9th Cir. 1997).  "In evaluating whether claims are barred by *Heck,* an important touchstone is whether a § 1983 plaintiff could prevail only by negating 'an element of the offense of which he has been convicted.'"  *Cunningham v. Gates*, 312 F.3d 1148, 1153-54 (9th Cir. 2002) (quoting *Heck*, 512 U.S. at 487 n. 6) (finding plaintiff's claims barred under *Heck* where complaint disputed several factual issues the state jury had already resolved against him).

Here, Corrigan was convicted in Grant County District Court of failure to obey an officer in violation of RCW § 46.61.022, the very violation forming the basis for the contested warrantless arrest.  Presumably, the factfinder determined that Kron was "reasonably identifiable as a law enforcement officer," a

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT~ 16

1    requirement of the statute.  Corrigan does not dispute that he passed Kron, or that

2    Kron's emergency lights were activated, or that Kron followed him closely.  If the

3    factfinder found that Corrigan violated the statute, it is reasonable that Kron too,

4    could come to that conclusion.  Thus, Corrigan's claim that his warrantless arrest

5    was unsupported by probable cause is also barred by his subsequent criminal

6    conviction under *Heck*.

7          **i.    Searches**

8            Because the Troopers had probable cause to arrest Corrigan, his arrest was

9    lawful and the Troopers' search of Corrigan's person incident to arrest does not

10   give rise to a Fourth Amendment violation.  The "search-incident-to-arrest

11   doctrine" permits "a police officer who makes a lawful arrest [to] conduct a

12   warrantless search of the arrestee's person and the area 'within his immediate

13   control.' " *Davis v. United States*, 131 S.Ct. 2419, 2424 (2011) (citing *Chimel v.

14   California*, 395 U.S. 752, 763 (1969)).  The fact of a lawful arrest, standing alone,

15   authorizes a search.  *Maryland v. King*, 133 S.Ct. 1958, 1971 (2013) (citation

16   omitted).

17           Nor was any inventory search of Corrigan's vehicle incident to

18   impoundment unlawful.  In Washington, "[a] vehicle may lawfully be impounded

19   if authorized by statute or ordinance.  'In the absence of statute or ordinance, there

20   must be reasonable cause for the impoundment.' " *State v. Bales,* 15 Wash. App.

834, 835 (1976) (quoting *State v. Singleton,* 9 Wash. App. 327, 511 P.2d 1396, 1399 (1973)).  An officer may "take custody of a vehicle, at his or her discretion" if it is "unattended upon a highway where the vehicle constitutes an obstruction to traffic or jeopardizes public safety."  RCW § 46.55.113(2)(b); *see also United States v. Jensen*, 425 F.3d 698, 706 (9th Cir. 2005) ("Once the arrest was made, the doctrine allowed law enforcement officers to seize and remove any vehicle which may impede traffic, threaten public safety, or be subject to vandalism.").  Additionally, "[p]olice officers may conduct a good faith inventory search following a lawful impoundment without first obtaining a search warrant."  *Bales,* 15 Wash. App. at 835 (citations omitted); *see South Dakota v. Opperman*, 428 U.S. 364 (1976).  Corrigan does not dispute that he did not respond when the Troopers asked him if there was someone to collect his vehicle.  ECF No. 33 at 6; *see* ECF No. 40 at 2-5.  Nor does Corrigan dispute the propriety of the inventory search of his automobile.  Thus, Iverson's impoundment of the car was lawful, and any inventory search incident to impoundment is also lawful.

### b.  False Arrest and False Imprisonment

Corrigan also generally alleges false arrest and false imprisonment in his complaint.  ECF No. 1 at 7.  The existence of probable cause is a complete defense to a state action for false arrest or false imprisonment.  *See McBride v. Walla Walla County,* 95 Wash. App. 33, 38 (1999).  Under Washington law, "[p]robable cause

exists where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a *man of reasonable caution* in a belief that an offense has been or is being committed." *Rodriguez v. City of Moses Lake*, 158 Wash. App. 724, 729 (2010) (internal quotations omitted) (emphasis in original). "It is a reasonableness test, considering the time, place, and circumstances, and the officer's special expertise in identifying criminal behavior." *McBride,* 95 Wash.App. at 38.   The state and federal probable cause standards are similar. *See Gerstein v. Pugh*, 420 U.S. 103, 112 (1975) (The standard for arrest is probable cause, defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.') (citation omitted).

For the aforementioned reasons, the Court finds that the Troopers had probable cause—under either test—to arrest Corrigan for failure to stop.  Thus, the claims of false arrest and false imprisonment are likewise barred.

### c. Malicious Prosecution

Corrigan alleges malicious prosecution only against Kron.  ECF No. 1 at 9. To succeed on a claim of malicious prosecution under Washington law, Plaintiff must establish the following elements:

(1) that the prosecution claimed to have been malicious was instituted or continued by the defendant; (2) that there was want of probable cause for the

institution or continuation of the prosecution; (3) that the proceedings were instituted or continued through malice; (4) that the proceedings terminated on the merits in favor of the plaintiff, or were abandoned; and (5) that the plaintiff suffered injury or damage as a result of the prosecution.

*Clark v. Baines*, 150 Wash. 2d 905, 911 (2004) (citing *Hanson v. City of Snohomish*, 121 Wash.2d 552, 558 (1993)).  Here, Corrigan fails to meet the fourth element, "that the proceedings terminated on the merits in favor of the plaintiff," because Corrigan was convicted for failure to stop in violation of RCW § 46.61.022 . As such, Corrigan's cause of action for malicious prosecution fails.

### 3. Whether Troopers' Use of Force Was Reasonable, Barring Excessive Force Claims

Corrigan's complaint makes a conclusory allegation that Kron, Iverson, Mitchell, and Ponozzo used excessive force.  ECF No. 1 at 8.  However, Corrigan has identified no material facts that could give rise to an excessive force claim against Mitchell or Ponozzo.  The complaint mentions no physical contact between Mitchell and Corrigan; Ponozzo's contact with Corrigan, per Corrigan's complaint and declaration appears to be limited to booking, fingerprinting, photographing and giving corrections apparel to Corrigan.  *See* ECF No. 1 at 4-7.  Thus, the Court examines the excessive force claim only against Kron and Iverson, who argue that any force applied against Corrigan was objectively reasonable, and therefore not excessive.  ECF No. 33 at 16.

1    The Ninth Circuit analyzes claims of excessive force by a police officer

2    under the Fourth Amendment reasonableness standard described in *Graham v.*

3    *Connor,* 490 U.S. 386 (1989).  *Coles v. Eagle,* 704 F.3d 624, 627 (9th Cir. 2012).

4    "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the

5    question is whether the officers' actions are 'objectively reasonable' in light of the

6    facts and circumstances confronting them, without regard to their underlying intent

7    or motivation." *Graham,* 490 U.S. at 397. Moreover, "the 'reasonableness' of a

8    particular use of force must be judged from the perspective of a reasonable officer

9    on the scene, rather than with the 20/20 vision of hindsight," and must allow "for

10   the fact that police officers are often forced to make split-second judgments—in

11   circumstances that are tense, uncertain, and rapidly evolving—about the amount of

12   force that is necessary in a particular situation." *Id.* at 396–97.

13    Determining whether an officer's force was excessive or reasonable

14   "requires a careful balancing of the nature and quality of the intrusion on the

15   individual's Fourth Amendment interests against the countervailing governmental

16   interests at stake." *Id.* at 396 (internal quotations omitted).  In weighing the

17   governmental interests at stake under *Graham,* a court should consider several

18   factors, including: (1) the severity of the crime, (2) whether the suspect poses an

19   immediate threat to the safety of the officers and others, and (3) whether he is

20   actively resisting arrest or attempting to evade arrest by flight.  *Id.* at 396; *see also*

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT~ 21

*Mattos v. Agarano,* 661 F.3d 433, 441 (9th Cir. 2011) (explaining that the most important factor is whether the suspect poses an immediate threat to the safety of the officers or others).  These factors are not exclusive.  *Franklin v. Foxworth,* 31 F.3d 873, 876 (9th Cir. 1994).  Because claims of excessive force often involve disputed factual contentions and competing inferences to be drawn therefrom, the Ninth Circuit has cautioned that summary judgment in excessive force cases "should be granted sparingly."  *Lolli v. Cnty. of Orange,* 351 F.3d 410, 415–16 (9th Cir. 2003).

Liberally construing Corrigan's pro se complaint, the Court concludes that Corrigan's excessive force claim can only plausibly come from his contention that the handcuffs were applied too tightly.[8]  The Ninth Circuit has held that *tight* handcuffing can constitute excessive force; the question is usually fact-specific and is likely to turn on the credibility of witnesses.  *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000) (holding that question of excessive force was for the jury where plaintiff was tightly handcuffed and officers refused to loosen the handcuffs when he complained).  However, the Ninth Circuit has also made it clear that "defendants [in excessive force cases] can still win on summary judgment if

---

[8] Corrigan does not appear to dispute the use of handcuffs, other than as a seizure related to his warrantless arrest claim.

the district court concludes after resolving all facts in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances." *Alexander v. County of Los Angeles,* 64 F.3d 1315, 1322 (9th Cir. 1995) (finding that, though a close case, it could not be said as a matter of law that officers' actions were reasonable where plaintiff asked repeatedly to have handcuffs removed or loosened, his hands swelled and turned blue, and his handcuffs were readjusted only after he had been cuffed for 35-40 minutes).

Given the totality of circumstances, including the context of the arrest, the Court concludes that there is no genuine issue of fact that anything more than a reasonable level of force was used. *See Jackson v. City of Bremerton,* 268 F.3d 646, 650, 653 (9th Cir. 2001) (affirming excessive-force summary judgment in favor of police officers even though the plaintiff's finger was fractured and permanently damaged). Corrigan does not dispute that he did not complain of pain to the officers while being transported. ECF No. 33 at 7. He did not ask for the handcuffs to be removed. Officer Kron offered twice to extend the handcuffs to make them more comfortable, an offer Corrigan accepted when he finally understood it. *See* ECF No. 33 at 7; ECF No. 40 at 5. Corrigan does not dispute that he made no complaint of injury while undergoing an inmate medical assessment at Grant County Corrections. *Id.* He had no visible signs of injury. *Id.* Corrigan simply did not manifest the type of injury or complaints that give rise to

1  an excessive force case for tight handcuffing.  There is no evidence that would

2  permit a fact-finder to conclude that the officers applied an unreasonable amount

3  of force under the circumstances.

4       Alternatively, even if some degree of force used in tightly handcuffing

5  Corrigan was deemed to be excessive, a reasonable officer could have thought the

6  force used was needed, entitling the officers to qualified immunity.  *Pearson v.*

7  *Callahan*, 555 U.S. 223, 231 (2009); *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

8  See further discussion below.

9     **4.  <u>Whether Individual Defendants Are Entitled to Immunity</u>**

10       **a.  Whether Deputy Prosecutor Mitchell is Entitled to Absolute**

11           **Immunity**

12       Defendants contend that the only action against Deputy Prosecutor Mitchell

13  alleged in the complaint is that he conferred by telephone with a law enforcement

14  officer at the scene of an arrest.  *See* ECF No. 1 at 5.  They argue that the

15  prosecutor is *absolutely* immune from claims arising from the performance of

16  traditional functions of an advocate, including conferring with law enforcement.

17  The Court, however, disagrees.

18       A prosecutor is entitled to absolute immunity from a civil action for

19  damages when he or she performs a function that is "intimately associated with the

20  judicial phase of the criminal process."  *Imbler v. Pachtman,* 424 U.S. 409, 430

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT~ 24

1   (1976).  However, advising the police in the investigative phase of a criminal case

2   is not so "intimately associated with the judicial phase of the criminal process" as

3   to qualify for absolute immunity.  *Burns v. Reed*, 500 U.S. 478, 493 (1991)

4   (quoting *Imbler,* 424 U.S. at 430) (holding that absolute immunity does not extend

5   to the prosecutorial function of giving legal advice to the police).  Immunity

6   determinations rest on "the nature of the function performed, not the identity of the

7   actor who performed it."  *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (citations

8   omitted); *Mishler v. Clift,* 191 F.3d 998, 1002 (9th Cir. 1999).  The party asserting

9   immunity bears the burden to show that such protection is justified.  *See Burns,*

10  500 U.S. at 486 (1991).

11          Here, the activity detailed in the complaint (and in Corrigan's response to

12  the County's motion for summary judgment) is that Mitchell was on the telephone

13  with Kron during Corrigan's detention.  Presumably, as in *Burns*, Mitchell was

14  advising the officer—a function that the Supreme Court has held to be outside the

15  protection of absolute immunity.  Thus, Mitchell is not entitled to absolute

16  immunity for advising Officer Kron via telephone.

17          **b.  Whether the Troopers, Ponozzo, and Mitchell are entitled to**

18              **qualified immunity**

19          The Troopers, Sergeant Ponozzo, and Deputy Prosecutor Scott Mitchell

20  have also moved for summary judgment on grounds that they are entitled to

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT~ 25

1    qualified immunity.  ECF No. 33 at 19; ECF No. 38 at 6, 7.  Qualified immunity

2    shields government actors from civil damages unless their conduct violates

3    "clearly established statutory or constitutional rights of which a reasonable person

4    would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009).  In

5    evaluating a state actor's assertion of qualified immunity, a court must determine

6    (1) whether the facts, viewed in the light most favorable to the plaintiff, show that

7    the defendant's conduct violated a constitutional right; and (2) whether the right

8    was clearly established at the time of the alleged violation such that a reasonable

9    person in the defendant's position would have understood that his actions violated

10   that right.  *Saucier v. Katz,* 533 U.S. 194, 201–02 (2001) (receded from in *Pearson*,

11   555 U.S. 223 (holding that while *Saucier*'s two step sequence for resolving

12   government official's qualified immunity claims is often appropriate, courts may

13   exercise their sound discretion in deciding which of the two prongs should be

14   addressed first)).  If the answer to either inquiry is "no," then the defendant is

15   entitled to qualified immunity and may not be held personally liable for his or her

16   conduct.  *Glenn v. Washington Cnty.,* 673 F.3d 864, 870 (9th Cir. 2011). "If the

17   law did not put the officer on notice that his conduct would be *clearly unlawful,*

18   summary judgment based on qualified immunity is appropriate." *Saucier,* 533

19   U.S. at 202 (emphasis added).

20   ///

### i.    Troopers Kron and Iverson

As the Court has already found above, Corrigan's claims of warrantless arrest and excessive force in violation of the Fourth Amendment lack foundation. However, even if some degree of force used in tightly handcuffing Corrigan was deemed excessive, a reasonable officer could have thought the force used was needed, entitling the troopers to qualified immunity. *Pearson*, 555 U.S. at 231; *Saucier*, 533 U.S. at 202. Corrigan has not shown that the use of handcuffs in the manner deployed violated a clearly established constitutional right. *See Pearson*, 555 U.S. at 231. A reasonable trooper could properly believe that the use of this minimal level of force would not violate a clearly established constitutional right. *See Jackson*, 268 F.3d at 653 n. 5; *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986) (stating that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

### ii.    Deputy Prosecutor Mitchell

As a preliminary matter, it is unclear what right Corrigan contends is violated by Mitchell's communications with Kron. Although Mitchell is not entitled to absolute immunity for presumably advising Trooper Kron, he does receive qualified immunity for engaging in that role. Corrigan had already been stopped and taken into custody when Kron communicated with Mitchell. Thus, Mitchell could have advised Kron as to what course of action to take, such as

advising Kron to complete the arrest by taking Corrigan to jail.  The Court has already found that a reasonable person could believe there was probable cause to arrest Corrigan and that the officers used reasonable force in doing so.

Accordingly, the Court finds that there are no facts or law in this case which would put Mitchell on notice that his actions were "clearly unlawful," and thus, he is entitled to qualified immunity.

### iii.    Sergeant Ponozzo

Here, Corrigan has suggested no facts indicating that Sergeant Ponozzo deprived him of any specific right, such as by using excessive force.[9]  Insofar as Corrigan suggests that Ponozzo is complicit in his allegedly unlawful arrest, Corrigan also fails to establish facts indicating that Ponozzo was involved in violating his right to be free from arrests unsupported by probable cause.  In a similar case, the Ninth Circuit held that an officer had qualified immunity where he assumed custody of a suspect from officers who said they had seen the suspect running from an abandoned police vehicle.  *Choi v. Gaston*, 220 F.3d 1010, 1012 (9th Cir. 2000).  The Ninth Circuit noted that it was not objectively unreasonable

---

[9] Corrigan alleges that Ponozzo "booked, fingerprinted, and photograph Plaintiff," and that Ponozzo "joined in the acts complained of when Plaintiff was booked into the Grant County Corrections Facility."  ECF No. 1 at 5-7.

for the officer to believe there was probable cause to arrest the suspect, though the information was inaccurate.  *Id*.  Likewise, here Corrigan's complaint alleges only that Ponozzo booked, fingerprinted, and photographed him at the Grant County Corrections Facility.  *See* ECF No. 1 at 5-6.  As in *Choi*, Corrigan alleges no facts indicating that Ponozzo would have any reason to believe that the arrest was not supported by probable cause—which in fact it was (see discussion above).

Moreover, the Fourth Amendment allows police to take certain routine "administrative steps incident to arrest— i.e., . . . book[ing], photograph[ing], and fingerprint[ing]."  *Maryland v. King*, 133 S.Ct. 1958, 1977 (2013) (citation omitted).

Accordingly, the Court finds that there are no facts or law in this case which would put Ponozzo on notice that his actions were "clearly unlawful," and thus, he is entitled to qualified immunity.

5. **Whether Corrigan has alleged any question of fact as to Grant County's liability**

Corrigan's complaint alleges that the county adopted reckless policies and practices, including denial of a fair trial, abuse of judicial process, and failure to supervise Grant County personnel.  ECF No. 1 at 10.  Grant County counters that Corrigan presents no evidence giving rise to its liability.  "Local governing bodies…can be sued directly under § 1983 for monetary, declaratory, or injunctive

1  relief where…the action that is alleged to be unconstitutional implements or

2  executes a policy statement, ordinance, regulation, or decision officially adopted

3  and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of City of*

4  *New York*, 436 U.S. 658, 690 (1978).  "[L]ocal governments… may be sued for

5  constitutional deprivations visited pursuant to governmental 'custom' even though

6  such a custom has not received formal approval through the body's official

7  decisionmaking channels."  *Id.* at 690-91.  However, "a municipality cannot be

8  held liable *solely* because it employs a tortfeasor—or, in other words, a

9  municipality cannot be held liable under § 1983 on a *respondeat superior* theory."

10  *Id*. at 691.

11       The Court notes that the troopers who arrested Corrigan were employees of

12  the Washington State Patrol.  The Washington State Patrol is an agency of the

13  State of Washington, not Grant County.  *See* RCW § 43.43.010.  States and state

14  agencies are not susceptible to suits under 42 U.S.C. § 1983.  *See Will v. Michigan*

15  *Dept. of State Police,* 491 U.S. 58, 71 (1989) (holding neither a State nor its

16  officials acting in their official capacities are "persons" under § 1983); *Maldonado*

17  *v. Harris,* 370, F.3d 945, 951 (9th Cir. 2004) (state agency not amenable to suit

18  under § 1983).  Thus, Corrigan's claim fails insofar as it relates to Grant County's

19  responsibility to train its employees about the right to be free from excessive force,

20

as Corrigan's excessive force and warrantless arrest claims relate only to the State Troopers.

Insofar as Corrigan's claims against Grant County relate to "denial to Plaintiff of a fair and impartial trial" and "abuse of the judicial and post-judicial process," ECF No. 1 at 10, Grant County argues that 1) there are no factual allegations as to how these deprivations were accomplished, and 2) the County is not liable because the municipal court's authority was based in state, not municipal, law.  ECF No. 38 at 12.

Corrigan's complaint fails to detail any infractions on the part of Grant County that would give rise to a constitutional violation.  In his response to the County's motion for summary judgment, Corrigan claims "there could be county policies and other discovery where evidence would show that Grant County had duties to perform or not – thereby resulting in deprivations of Corrigan's constitution rights."  ECF No. 42 at 13.

Construed liberally, Corrigan's complaint and declaration may implicate his right to receive adequate medical care while in the custody of the County based on his claim that his cell was overcrowded, he had to sleep on a thin mattress on the cold floor, and he was given some but not all of his medications.  ECF No. 43 at 6. Because Corrigan had not been convicted of a crime, but had only been arrested, his rights derive from the due process clause rather than the Eighth Amendment's

protection against cruel and unusual punishment.  *Bell v. Wolfish,* 441 U.S. 520, 535 (1979); *Frost v. Agnos,* 152 F.3d 1124, 1128 (9th Cir. 1998); *Carnell v. Grimm,* 74 F.3d 977, 979 (9th Cir. 1996).  With regard to medical needs, the due process clause imposes, at a minimum, the same duty the Eighth Amendment imposes: "persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs."  *Carnell,* 74 F.3d at 979.  Under the Eighth Amendment's standard of deliberate indifference, a person is liable for denying a prisoner needed medical care only if the person "knows of and disregards an excessive risk to inmate health and safety." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994).  In order to know of the excessive risk, it is not enough that the person merely "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, [ ] he must also draw that inference." *Id.*  If a person should have been aware of the risk, but was not, then the person has not violated the Eighth Amendment, no matter how severe the risk.  *Jeffers v. Gomez,* 267 F.3d 895, 914 (9th Cir. 2001).

Here, Corrigan has not alleged facts—in his complaint or his declaration in response to Defendants' motion for summary judgment—indicating that there was an "excessive risk" to his health and safety, let alone that any representative of Grant County knew about it.  Thus, such a claim is simply not sustainable.

///

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT~ 32

1    Nor has Corrigan alleged facts sufficient to find Grant County liable for any

2    violations of Corrigan's rights in the courts.  First, his complaint identifies no

3    policy or practice that deprived him of his constitutional rights as required for

4    liability to attach under *Monell*.  Even if the court had deprived him of his rights

5    via a policy or practice, the next question is whether under state law the acts in

6    question were performed under the municipality's or the state's authority.  *Eggar v.*

7    *City of Livingston*, 40 F.3d 312, 314 (9th Cir. 1994).  District courts in Washington

8    are governed by state law.  *See* RCW 3.30.080; RCW 2.04.190.  Insofar as his

9    declaration alleges improper judicial or court action, it relates to the administration

10    of the courts under state law.

11    Moreover, Corrigan is far from pleading an adequate cause of action for

12    Constitutional violations based upon a county policy.  He does not allege there is a

13    policy---"there could be county policies . . . resulting in deprivations of Corrigan's

14    constitution rights", ECF No. 42 at 13, ---let alone identify particularly the

15    constitutional violation he suffered.  Even bare assertions or conclusory allegations

16    of a policy, without pleading factual content, are insufficient to "unlock the doors

17    of discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  So it is of no moment

18    that Corrigan complains he has been deprived of discovery.

19    For the foregoing reasons, the Court finds that Corrigan has failed to allege,

20    let alone identify sufficient factual matter in order to defeat summary judgment.

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT~ 33

6. **Whether Corrigan Has Established a Conspiracy Claim**

To prove a § 1983 civil conspiracy claim, Corrigan must establish 1) that the Defendants agreed to deprive Corrigan of a constitutional right, 2) an overt act in furtherance of the conspiracy, and 3) a constitutional violation. *See Gilbrook v. City of Westminster,* 177 F.3d 839, 856–57 (9th Cir. 1999).

As discussed extensively above, no constitutional violation took place, barring a finding of conspiracy. Even if a constitutional violation had taken place, Corrigan has alleged no facts indicating any agreement between the defendants to deprive Corrigan of a constitutional right. Just like the allegations of an illegal conspiracy in *Twombly*, Corrigan's conclusory allegations here are not entitled to be assumed true. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554-55 (2007).

For these reasons, the Court finds that Plaintiff has established no genuine issue of material fact on his conspiracy claim. Accordingly, the Court grants Defendants' motion for summary judgment on this issue.

CONCLUSION

For the above described reasons, the Court grants summary judgment on both motions with respect to all claims and all defendants.

///

///

///

ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT~ 34

**IT IS HEREBY ORDERED:**

1.  Defendants Washington State Patrol Troopers Timothy Kron and
    Cameron Iverson's Motion for Summary Judgment (ECF No. 33) is
    **GRANTED**.

2.  Defendants Grant County, Scott Ponozzo, and Douglas R. Mitchell's
    Motion for Summary Judgment (ECF No. 38) is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and
provide copies to counsel, enter Judgment for the Defendants, and CLOSE the file.

**DATED** December 10, 2013.



THOMAS O. RICE
United States District Judge